**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3452-15T2

GEORGE M. THORN,

    Appellant,

v.

BOARD OF REVIEW and
NORTH HANOVER TOWNSHIP
BOARD OF EDUCATION,

    Respondents.

_____

Submitted June 21, 2017 — Decided September 6, 2017

Before Judges Fuentes and Koblitz.

On appeal from the Board of Review, Department of Labor, Docket No. 058,789.

Maselli Warren, PC, attorneys for appellant (Perry S. Warren, of counsel and on the brief; James Kilduff, on the brief).

Christopher S. Porrino, Attorney General, attorney for respondent Board of Review (Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Peter H. Jenkins, Deputy Attorney General, on the brief).

Respondent North Hanover Township Board of Education has not filed a brief.

PER CURIAM

George M. Thorn appeals from the final decision of the Board of Review (Board) which upheld the decision of the Appeal Tribunal that found Thorn disqualified for benefits under N.J.S.A. 43:21-5(g) as April 27, 2015, for one year, from the date the Division of Unemployment Insurance discovered the illegal receipt or attempted receipt of benefits. The Board also found Thorn was obligated to refund $23,822 he received as unemployment benefits for the weeks ending on September 4, 2010 through June 25, 2011, in accordance with N.J.S.A. 43:21-16(d) and N.J.A.C. 12:17-14.2(b). Finally, under the authority provided in N.J.S.A. 43:21-16(a), the Board ordered Thorn to pay a fine in the amount of $5,955.50, which constitutes 25% of the amount fraudulently obtained.

In this appeal, Thorn argues the Appeal Tribunal's decision "fails to reference any testimony or legal argument" raised during "the approximately one-hour-long" telephonic hearing conducted by an Examiner on December 2, 2015. Thorn, who was represented by counsel at the hearing, maintains that he did not intentionally or knowingly misrepresent his employment status when he applied for partial unemployment compensation benefits.

The followings facts are uncontested. Thorn was employed by the North Hanover Township School District as a fulltime Teacher of Physical Education/Health for the school year 2009-2010. His

annual salary was $47,785. On March 3, 2010, Thorn received a letter from the Superintendent of Schools informing him that "the potential exists" that his contract would not be renewed for the 2010-2011 school year. On April 20, 2010, the Superintendent of Schools apprised Thorn that "[e]nrollment concerns and the related staffing levels made it impossible for the District to offer you continued employment. As the District's needs for 2010-2011 are finalized in the next several months, please do not hesitate to apply for any posted positions for which you qualify."

On May 11, 2010, the Superintendent of Schools advised Thorn that in accordance with the provisions of the collective bargaining agreement the School District had negotiated with the North Hanover Township Education Association, he was offering Thorn "employment for the 2010-2011 school year as a PE/Health Teacher . . . at a salary of $19,114 which will be adjusted accordingly upon completion of current negotiations." As Thorn explained, this represented part-time employment as a teacher. He signed a contract accepting the position, which stated he would work two days per week at a prorated annual salary of $20,028.40.

On July 4, 2010, nearly two months after he received and accepted the part-time employment offer, Thorn applied for unemployment benefits. He stated that he spoke to a claims representative on the phone and "explained to her that I was

employed with the District for the two days.  I was very clear about the situation and had no intention to mislead or submit false information."  Thorn received weekly unemployment compensation benefits in the amount of $544 from September 4, 2010 to June 25, 2011.  His weekly benefits payments ended when he was hired as a fulltime teacher for school year 2011-2012.

Robert Skorochocki is an investigator for the Bureau of Unemployment Benefits Payment Control (Bureau).  He testified at the telephonic hearing conducted by the Examiner on behalf of the Appeal Tribunal.  Skorochocki interviewed Thorn in 2011 concerning the alleged overpayment of benefits.  The North Hanover Township School District also provided documentation that showed Thorn earned $20,140.90 from September 2010 to June 2011.  Thorn also collected $544 weekly unemployment benefits during this same time period, totaling $23,822. Skorochocki testified that the Bureau's records confirmed that Thorn did not report any of his earning from his part-time employment.

The record before the Appeal Tribunal also shows that after he applied for unemployment benefits on July 4, 2010, Thorn received a "blue book entitled <u>Unemployment Insurance: Your Rights and Responsibilities</u>." Skorochocki directed the Examiner to the relevant part of this document which contained the following information:  "It is a serious offense to claim and or receive

unemployment insurance benefits fraudulently. It can lead to severe fines, denial of future benefits or penalties including criminal prosecution and imprisonment." Among the examples provided of fraudulent behavior, the book specifically mentioned failure to disclose income derived from part-time employment.

On cross-examination by appellant's counsel, Skorochocki confirmed that the Bureau did not have anything in writing from Thorn in which he denied receiving income as a part-time teacher from September 4, 2010 to June 25, 2011. As Skorochocki explained, Thorn made his application by phone. The phone application procedure is an electronic system in which the applicant responds to "yes" or "no" questions designed to illicit material information to determine eligibility for benefits. It is also undisputed that Thorn would have been entitled to receive partial benefits if he had disclosed his part-time employment status. Skorochocki testified that Thorn would have received weekly benefits "in the range" of $200.

The following colloquy between appellant's counsel and Skorochocki makes this point clear.

> APPELLANT'S COUNSEL: So were it not for this unilateral conclusion by the Division that Mr. Thorn's conduct arouse to the level of fraud then he would in fact be entitled to $200 and some dollars and you are in a better position to calculate the exact amount using your formula, $200 and some dollars per week for

each during the time period in question, correct?

BUREAU INVESTIGATOR: That's right, if non-fraud determination was made he would have been entitled to the difference from the partial and his actual earnings. That is correct.

APPELLANT'S COUNSEL: And if the outcome of this hearing is that Mr. Thorn did not engage in fraud then he would in fact be entitled to that $200 and some dollars per week for each week during this time period, correct?

BUREAU INVESTIGATOR: That is correct. If after the Appeal Hearing and the Appeals Examiner determines it non-fraud he would be entitled to that, that is correct.

. . . .

APPELLANT'S COUNSEL: Okay, so the question was . . . the first time that anyone from the Division and we will count the department of unemployment . . . communicated with Mr. Thorn either in writing or verbally between September of 2010 and June of 2011; the answer to that question is, yes, correct?

BUREAU INVESTIGATOR: Correct.

APPELLANT'S COUNSEL: So Mr. Thorn made no false statement to the . . . Division or the department of unemployment?

BUREAU INVESTIGATOR: An actual statement, no.

APPELLANT'S COUNSEL: Not verbally?

BUREAU INVESTIGATOR: No.

APPELLANT'S COUNSEL: Not in writing?

BUREAU INVESTIGATOR: No.

APPELLANT'S COUNSEL: So the Division bases this determination of fraud solely on Mr. Thorn having pushed button two rather than button one or "A" or "B" or whatever during the . . . time period that he received unemployment?

BUREAU INVESTIGATOR: Yeah, that is correct.

The Examiner followed up on this issue when Thorn testified.

EXAMINER: Okay, now the investigator indicated that you certified for benefits by telephone, do you recall doing that, sir?

APPELLANT: Yes.

EXAMINER: Do you recall the question that the investigator had read into the record, . . . question number seven; it is a yes or no answer. The question was: "Did you work during the period in question[?]" [D]o you recall answering that question, sir?

APPELLANT: Does the question sound familiar, as to the exact verbiage . . . I can't say I do but I do remember reading it and in my actual mind believing what I was pressing was true based on the claim that I made that I was claiming the three days non-working so in my mind that was true to me.

. . . .

EXAMINER: . . . how did you answer that question, sir?

. . . .

APPELLANT: No, I responded, "No"

EXAMINER: Okay, so you pushed button two that you did not work?

APPELLANT: Yes.

APPELLANT'S COUNSEL: Well, wait, let me clarify here; he said he doesn't recall what the question was.

EXAMINER: Okay, the question was: "Did you work it was yes or no?

APPELLANT: For the days that I was claiming, no.

The Appeal Tribunal issued its decision on December 2, 2015. The Tribunal found appellant answered "No" to the question "Did you work during the weeks claimed?" despite the fact that he was working on a part-time basis for the same employer. Citing appellant's testimony, the Tribunal found that appellant received these benefits as "a result of false or fraudulent representation." The Tribunal tabulated the overpayment weeks and determined, as a matter of law, that appellant had violated N.J.S.A. 43:21-16(d)(1) and was therefore "liable to repay those benefits in full" in the sum of $23,882. The Tribunal also imposed a fine of $5,995, which represented 25% of the amount fraudulently obtained. N.J.S.A. 43:21-16(a). The Board accepted the Tribunal's decision without modification.

Citing Banco Popular N. Am. v. Gandi, 184 N.J. 161 (2005), appellant argues that viewing the record objectively, his conduct was, at worse, merely negligent not fraudulent. In Banco Popular, our Supreme Court defined the four elements necessary to prove the

8                                                    A-3452-15T2

tort of common-law fraud: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Id. at 173 (quoting Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997). Here, the fraudulent conduct that triggers the statutory sanctions has been defined by the Legislature in N.J.S.A. 43:21-16(d)(1). The statute requires an applicant or another's "nondisclosure or misrepresentation . . . of a material fact." The Legislature created this statutory standard to recover benefits that appellant was not entitled to receive.

The Supreme Court confronted a similar situation in Malady v. Board of Review, 76 N.J. 527 (1978):

> Thus, we believe that subsection [N.J.S.A. 43:21-16](d), which is found in a provision entitled "Penalties", is intended by the Legislature to give the director the discretion to impose an additional penalty where the claimant purposely fails to make an accurate or truthful report of his income. That the other subsections of N.J.S.A. 43:21-16 also provide separately for some penalty, rather than indicating the contrary, is in fact strong evidence of subsection (d)'s own "penalty" potential.
>
> [Id. at 531]

"Our scope of review of an administrative agency action is limited and highly deferential." In re Y.L., 437 N.J. Super. 409, 412 (App. Div. 2014). As long as the Board's decision is supported by sufficient credible evidence in the record and was not "arbitrary, capricious, or unreasonable," it will be affirmed. Brady v. Bd. of Review, 152 N.J. 197, 210 (1997). We review the record to determine: "(1) whether the agency's decision conforms with relevant law; (2) whether the decision is supported by substantial credible evidence in the record; and (3) whether, in applying the law to the facts, the administrative agency clearly erred in reaching its conclusion." Twp. Pharmacy v. Div. of Med. Assistance & Health Servs., 432 N.J. Super. 273, 283-84 (2013).

Against this standard of review, we discern no legal basis to disturb the Board's review determination.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION